UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN TOWER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JIDE J. ZEITLIN,<br>THE KEFFI GROUP LTD., and<br>INDEPENDENT MOBILE<br>INFRASTRUCTURE LTD.,<br><br>Defendants. | Civil Action No.: 1:07-cv-11629-DC<br>ECF CASE |

## COMPLAINT

Defendant Jide J. Zeitlin, acting together with and on behalf of defendants Keffi Group, Ltd. and Independent Mobile Infrastructure Ltd., misappropriated the identity of American Tower Corporation's Chairman, CEO and President, James D. Taiclet, Jr., for the purpose of interfering with American Tower's relationships with its institutional investors, disparaging American Tower's reputation in the commercial marketplace, and otherwise causing American Tower harm. Mr. Zeitlin, who attended Harvard Business School, worked as the Global Chief Operating Officer of Goldman Sachs investment banking, and serves on the Board of Directors of two publicly traded companies, knew or should have known that his actions were wrongful. American Tower Corporation brings this Complaint to recover for damages caused by Defendants' intentional and wrongful conduct and violations of United States law.

### The Parties

1. Plaintiff American Tower Corporation ("American Tower" or the "Company") is incorporated in the State of Delaware and has its principal place of business in Boston,

Massachusetts. American Tower, a publicly held company, is a leading owner and operator of wireless and broadcast communications sites in North America and internationally.

2. Defendant Jide J. Zeitlin ("Zeitlin") is an individual who, on information and belief, resides at 147 W. 15th Street, New York, NY 10011.

3. Defendant Keffi Group Ltd. ("Keffi") is a New York corporation, with a usual place of business at 590 Madison Ave # 3700, New York, NY 10022. On information and belief, Keffi is a private equity firm that either owns or has an ownership interest in Independent Mobile Infrastructure Ltd.

4. Defendant Independent Mobile Infrastructure Ltd. ("IMIL") is a privately held company with its corporate offices at Unitech Trade Centre Sector-43, Sushant Lok, Gurgaon, India 122 001. IMIL is affiliated with Keffi and at least a portion of its business is conducted out of New York.

5. IMIL is a direct competitor of American Tower in the wireless communications marketplace. Among IMIL's primary business activities is the construction and operation of towers and other infrastructure for mobile telecommunications.

6. Defendant Zeitlin is the founder of both Keffi and IMIL and currently serves as the President and Chairman of the Board of IMIL. On information and belief, Zeitlin conducts substantial business for himself, and as an agent of both Keffi and IMIL, from offices in New York, New York.

**Jurisdiction and Venue**

7. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332, since: 1) there is complete diversity of citizenship of the parties; and 2) the amount in controversy, exclusive of interests and costs, exceeds the sum of seventy-five thousand ($75,000) dollars.

8. Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because the Defendants have engaged in computer fraud in violation of 18 U.S.C. § 1030, and the Court may exercise supplemental jurisdiction over the state law claims which arise out of the same incident, pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court under 28 U.S.C. § 1391.

### Facts

10. Defendant Zeitlin has been engaged in an ongoing effort to defame, disparage, and harm the reputation of American Tower and its officers, particularly in the eyes of its investors, solely for the benefit of Zeitlin and defendants Keffi and IMIL, which are direct competitors of American Tower in the international mobile telecommunications infrastructure business.

11. On or about October 17, 2006, the online news and information website CNN.com published an online story about American Tower's stock option practices. *See* Bethany McLean, *More Sneaky Options Schemes*, http://money.cnn.com/magazines/fortune/fortune_archive/2006/10/30/8391767 (the "Article"). The Article painted American Tower and its executives in a negative light by stating that the company attempted to shield certain executive compensation practices from investors by making certain disclosures in footnotes to its proxy statements. The article compared American Tower's practices to those used by Enron Corporation. On information and belief, Zeitlin has a relationship with the Article's author, Bethany McLean, and provided her with information upon which the Article was based.

12. On information and belief, Zeitlin has a relationship with the Article's author, Bethany McLean, and provided her with information upon which the Article was based.

3

13. As part of its online services, CNN.com allows its users to send articles to other individuals via e-mail directly from CNN.com's website.

14. When a user sends an article from CNN.com's website, a pop-up window appears on the computer screen requiring that the user fill out the recipient's e-mail address and the sender's e-mail address. The sender also has the option of including a short text message to the recipient.

15. On or about October 17, 2006, using CNN.com's website, Zeitlin sent a copy of the Article by e-mail to Thomas D. Stern ("Stern") and Nick Advani ("Advani").

16. Stern is employed by Chieftain Capital Management ("Chieftain"), American Tower's fifth largest investor with over $600 million invested in American Tower. Advani is employed by Goldman Sachs & Company, Inc. ("Goldman Sachs"), American Tower's 11th largest investor with over $300 million invested in American Tower. Zeitlin specifically sent the e-mail to Stern and Advani because they manage large institutional investments in American Tower.

17. The e-mail sent by Zeitlin: (1) falsely stated that its sender was "jim.taiclet@americantower.com," the e-mail address of American Tower's Chairman, CEO and President, James D. Taiclet, Jr. ("Taiclet"), (2) contained the internet hyperlink to the Article, (3) included the message -- "fascinating," and (4) did not indicate that Zeitlin was in fact the sender of the e-mail.

18. A true and accurate copy of the October 17, 2006 e-mail to Thomas D. Stern and Nick Advani is attached hereto as Exhibit A.

19. Taiclet did not send or authorize the sending of the e-mail, and the e-mail was not sent from Taiclet's e-mail address at American Tower.

4

20. American Tower only learned that the e-mail had been sent when Stern sent a reply to the e-mail; the reply was directed to Taiclet's e-mail address at American Tower.

21. It was clear from Stern's reply that he believed the e-mail had in fact been sent by Taiclet.

22. The misrepresentations and false statements that it was American Tower's CEO Taiclet who had sent the e-mail to American Tower's largest investors and that Taiclet believed that the substance of the article was significant in that it was "fascinating," was more detrimental to American Tower's reputation and the reputation of its CEO than the publication of the Article alone. By sending the e-mail and sending it in Taiclet's name, Zeitlin intended to harm American Tower.

23. As a result of the fraudulent e-mail, American Tower was obligated to undertake an investigation at substantial cost, to determine who had misappropriated the identity of American Tower's CEO and was corresponding with its investors in Taiclet's name. American Tower's need to investigate the source of the misappropriated identity of its CEO was a foreseeable consequence of Zeitlin's actions and one which Zeitlin knew or should have known would require action by American Tower.

24. As part of its investigation, American Tower brought a "John Doe" lawsuit in the Massachusetts Superior Court, *American Tower Corp. v. Doe*, Civil Action No. 07-0851 D, seeking to determine the identity of the individual who sent the e-mail. As part of that case, American Tower issued a subpoena to Clickability, Inc., which maintains the e-mail services for CNN.com, seeking information regarding the sender of the e-mail. As a result of the subpoena to Clickability, American Tower determined the IP address from which the e-mail was sent. Based on the information from Clickability, American Tower then issued a subpoena to Cogent

5

Communications, the entity to whom the IP address was registered. Cogent Communications subsequently informed American Tower that the IP address was then assigned to Perry Capital, a New York company. On May 29, 2007, American Tower sought and obtained a Commission to take the out of state deposition of Perry Capital.

25. Just prior to the scheduled date for the taking of Perry Capital's deposition, American Tower was contacted by Zeitlin's counsel. At that time, defendant Zeitlin acknowledged that he had misappropriated Taiclet's identity and sent the e-mail via CNN.com.

26. Zeitlin accessed the CNN.com website and sent the e-mail from a computer at the offices of Perry Capital, located at 767 Fifth Avenue, New York, New York 10022.

27. At the time Zeitlin sent the e-mail, Perry Capital had been providing Zeitlin, and several of his associates, use of its facilities as an office of convenience in New York. Perry Capital provided Zeitlin with full use of its offices, phones, computers, and computer networks.

28. Despite identifying himself as the sender of the e-mail, Zeitlin has refused to cooperate with American Tower's attempts to further investigate his actions.

29. Zeitlin, acting in his individual capacity and on behalf of Keffi and IMIL, American Tower's competitors, misappropriated Taiclet's identity by falsely using Taiclet's e-mail address for the purpose of impersonating Taiclet and giving the false impression that it was American Tower's CEO who sent the negative Article to the investors.

30. Zeitlin, acting in his individual capacity and on behalf of Keffi and IMIL, misappropriated Taiclet's identity for the purpose of casting American Tower in a negative light with two of its institutional investors and interfering with the Company's relationships with its investors.

31. The misuse of the identity of American Tower's CEO and the unauthorized sending of an article about American Tower under his name, and purporting to constitute his views, was intended to benefit the Defendants to the detriment of American Tower and its relationships with its investors.

32. Zeitlin, who previously worked as the Global Chief Operating Officer for Goldman Sachs investment banking business and who currently serves on the Board of Directors of two publicly traded companies, Coach Incorporated and Affiliated Managers Group, Inc., knew or should have known that American Tower, as a publicly held company, has responsibilities to protect the integrity of its reputation and that of its officers, and would be obligated to investigate the misuse of the identity of its CEO, particularly in communications with its institutional investors.

33. Defendants' conduct was part of a longstanding and ongoing pattern of conduct intended to undermine American Tower's relationships with its investors and its position in the mobile infrastructure marketplace, to the Defendants' benefit.

34. On information and belief, Zeitlin contacted Bethany McLean, a reporter at *Money* magazine and an acquaintance of Zeitlin's, and provided purportedly negative information about American Tower in an effort to persuade Ms. McLean to write the Article portraying American Tower in a negative light. On information and belief, as soon as the Article was published online, Zeitlin immediately sent it to Stern and Advani out of the offices of Perry Capital using Taiclet's identity.

35. As a result of the Defendants' actions, American Tower has suffered and will continue to suffer harm including, but not limited to, the expense associated with investigating and identifying the source of the misappropriated identity and e-mail, the efforts made to

mitigate the effect of the Defendants' misrepresentations and the detriment to American Tower's reputation with its investors.

## COUNT I

### TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONS
(Against all Defendants)

36. American Tower restates and incorporates by reference all of the allegations in paragraphs 1 through 35 as if set forth fully herein.

37. At all relevant times, the Defendants were aware of the contractual or advantageous business relationships between American Tower and its investors, Chieftain and Goldman Sachs.

38. By their actions set forth above, Defendants intentionally interfered with American Tower's business relations with its investors through improper means or motive by, among other things, illegally misappropriating the identity of American Tower's CEO, transmitting the e-mail purporting to express Taiclet's view of the Article and its depiction of American Tower, and casting American Tower in a bad light by falsely associating the article with the purported views of its CEO.

39. Defendants' interference with American Tower's continuing business relationships with its investors was accomplished for improper motives, including damaging American Tower's reputation, and that of its CEO, among its investors.

40. Defendants' interference with American Tower's contractual and/or advantageous business relationships with its investors has caused actual damage to American Tower.

8

## COUNT II

### PRIMA FACIE TORT
(Against all Defendants)

41. American Tower restates and incorporates by reference all of the allegations in paragraphs 1 through 40 as if set forth fully herein.

42. The Defendants misappropriated Taiclet's identity and sent the e-mail purporting to express Taiclet's views solely for the purpose of intentionally inflicting harm upon American Tower and its CEO.

43. The Defendants had no other excuse or justification for their actions.

44. The Defendants' actions caused American Tower to suffer damages. Specifically, as a direct result of the Defendants' actions, American Tower suffered the substantial expense of, among other things, investigating and identifying the source of the misappropriated identity of its CEO, Taiclet, and its efforts to mitigate the effect of the Defendants' misrepresentations, as well as the detriment to American Tower's reputation with its investors.

## COUNT III

### DEFAMATION
(Against all Defendants)

45. American Tower restates and incorporates by reference all of the allegations in paragraphs 1 through 44 as if set forth fully herein.

46. By their actions set forth above, Defendants intentionally published a statement that falsely purported to be from Taiclet.

47. Defendants knew that the statement was not Taiclet's and that the e-mail message stating that it was "From: jim.taiclet@americantower.com" was false.

9

48.  Defendants' false statement contained in the e-mail impugned American Tower's basic integrity as a business, tarnished American Tower's reputation in the business community and was per se defamatory.

49.  Defendants intended the e-mail to result in harm to the pecuniary interests of American Tower, or knew or should have known that it was likely to do so.

50.  As a result of Defendants' actions, American Tower has and will continue to suffer pecuniary loss and other damages.

## COUNT IV

### COMPUTER FRAUD – 18 U.S.C. § 1030
### (Against Defendant Zeitlin)

51.  American Tower restates and incorporates by reference all of the allegations in paragraphs 1 through 50 as if set forth fully herein.

52.  All of the computers, internet servers and e-mail servers operated by CNN.com and Clickability are "protected computers" as defined under 18 U.S.C. §1030(e)(2), because they are used in and affect interstate commerce.

53.  None of the Defendants was authorized to access any of the computers, internet servers or e-mail servers operated by CNN.com or Clickability in order to use an e-mail address that did not belong to them or to impersonate Taiclet. Any authorized use of the computers, internet servers or e-mail servers operated by CNN.com or Clickability was exceeded by the fraudulent use of those computers to misappropriate the identity of American Tower's CEO and damage American Tower's reputation among its institutional investors.

54.  By their actions set forth above, the Defendants intentionally accessed protected computers without authorization.

55. Defendants' actions intentionally and/or recklessly caused damage to American Tower aggregating at least $5,000 in value, in violation of 18 U.S.C. § 1030(a)(5)(A).

56. Pursuant to 18 U.S.C. § 1030(g), the Defendants are liable to American Tower for compensatory damages and injunctive and/or other equitable relief.

WHEREFORE, American Tower requests that this Court grant judgment in its favor and award it the following relief:

1. Damages in an amount to be determined at trial;

2. Costs and reasonable attorneys' fees; and

3. Such other and further relief as the Court deems just and proper.

### JURY DEMAND

American Tower hereby requests a trial by jury on all claims so triable.

Respectfully submitted,

AMERICAN TOWER CORPORATION,

By its attorneys,

Nicholas J. Rosenberg (NR-4326)
ROSE, CHINITZ & ROSE
29 Commonwealth Ave
Boston, Massachusetts 02116
Tel: 617-536-0040
Fax: 617-536-4400

December 27, 2007

# EXHIBIT A

**From:** jim.taiclet@americantower.com [mailto:jim.taiclet@americantower.com]
**Sent:** Tuesday, October 17, 2006 9:57 PM
**To:** nickadvani@gmail.com; Thomas D. Stern
**Subject:** American Tower uses backdoor options to hide compensation  - October 30, 2006

**CNNMoney.com**

  EMAILTHIS

Powered by Clickability

* Please note, the sender's email address has not been verified.

Fascinating.

Click the following to access the sent link:

*American Tower uses backdoor options to hide compensation - October 30, 2006*

[ Save This Link ]   [ Forward This Link ]

Get your EMAIL THIS Browser Button and use it to email information from any Web site.

click here

*This article can also be accessed if you copy and paste the entire address below into your web browser.
http://money.cnn.com/magazines/fortune/fortune_archive/2006/10/30/8391767/index.htm?postversion=2006101711